IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

      **Plaintiff,**

      v.                                        **Cr. No. 22-889 JCH**

KADEEM SHAQUILE OSORIO,

      **Defendants.**

## MEMORANDUM OPINION AND ORDER

This case is before the Court on *Defendant Kadeem S. Osorio's Motion to Reconsider Order Denying Defendant's Motion to Suppress* [Doc. 73]. In the motion, the Defendant asks the Court to reconsider certain conclusions of fact and law set forth in its Memorandum Opinion and Order [Doc. 69] on his motion to suppress evidence. The United States has filed a response [Doc. 78], and Defendant has filed his reply [Doc. 80]. After again reviewing the evidence presented at the hearing, as well as the arguments of the parties on the motion to reconsider, the Court concludes that it did not err and the motion should be denied.

## LEGAL STANDARD

Motions to reconsider are proper in criminal cases even though the Federal Rules of Criminal Procedure do not specifically provide for them. *United States v. Randall*, 666 F.3d 1238, 1241-42 (10th Cir. 2011); *United States v. Christy*, 739 F.3d 534, 539 (10th Cir. 2014). A district court should have the opportunity to correct alleged errors in its dispositions. *See United States v. Dieter*, 429 U.S. 6, 8 (1976).

A motion to reconsider may be granted when the court has misapprehended the facts, a party's position, or the law. *Servants of Paraclete v. Does*, 204 F.3d 1005, 1012 (10th Cir. 2000). Specific grounds include: "(1) an intervening change in the controlling law, (2) new evidence previously unavailable, and (3) the need to correct clear error or prevent manifest injustice." *Id*. A motion to reconsider should not be used to revisit issues already addressed or advance arguments that could have been raised earlier. *Id*.

## DISCUSSION

Mr. Osorio does not assert that there has been an intervening change in the law or that new evidence has come to light. Rather, he contends that the Court should reconsider its ruling to correct clear error and prevent manifest injustice. To this end, he makes three principal arguments: that the encounter between Mr. Osorio and Agent Perry was not consensual, that Perry coerced Mr. Osorio into allowing him to look in his bag, and that the inevitable discovery doctrine does not apply in this case.

### I.      The Encounter on the Bus Was Consensual

Mr. Osorio's first argument is that the Court erred when it found that the encounter on the bus between Mr. Osorio and Agent Perry was consensual. Mr. Osorio asserts that Agent Perry stood facing him in the middle of the bus aisle, effectively blocking his egress. As grounds for this conclusion, Mr. Osorio argues that the Court should have credited the testimony of bus passenger Michael Martin and Mr. Osorio himself over that of Agent Perry on this point. However, as the Court explained in its Memorandum Opinion and Order, it did not find Mr. Martin's testimony to be credible or reliable due to various inconsistencies between his testimony and other evidence in the case. Doc. 69 at 1 n.1. Mr. Osorio also asserts that the Court did not consider his testimony. That is not the case, however. The Court did carefully consider Mr. Osorio's testimony in its

entirety, including on this issue. However, the Court ultimately found Agent Perry's testimony to be more credible and concluded that, consistent with his standard practice, Perry was standing in the aisle just behind Mr. Osorio such that he was not blocking Mr. Osorio's egress from the bus. In addition, the Court was not persuaded by Mr. Osorio's argument that the width of the aisle likely would have forced Perry to stand facing Mr. Osorio. The Court's will not reconsider these findings of fact.

Next, Mr. Osorio argues that the presence of two officers on the bus and the fact that Perry did not inform Mr. Osorio of his right to terminate the encounter weigh in favor of finding a seizure. In its prior opinion, this Court examined the totality of the circumstances surrounding the encounter, including all of the factors enumerated by the Tenth Circuit in *United States v. Lopez*, 443 F.3d 1280, 1284 (10th Cir. 2006) (quoting *United States v. Spence*, 397 F.3d 1280, 1283 (10th Cir. 2005)). Specific to Mr. Osorio's argument in favor of reconsideration, the Court found that "[a]lthough there were two officers present, Zamarron was out of the way at the front of the bus and did not engage with Mr. Osorio, so he did not even notice Zamarron until after Perry asked Mr. Osorio which bags belonged to him. Therefore, Zamarron's presence could not have reasonably affected whether Mr. Osorio felt free to terminate the encounter or decline to speak with Perry." Doc. 69 at 9. Having reviewed the evidence again, the Court stands by these factual findings in light of its assessment of the credibility of the witnesses.

Mr. Osorio argues that the timing of his observation of the second officer is not determinative because Zamarron "was present, nonetheless." Doc. 73 at 5. However, Mr. Osorio's reliance on *United States v. Gaines*, 918 F.3d 793, 796-97 (10th Cir. 2019) does not assist his argument. In *Gaines*, the court found the defendant had been seized when two uniformed officers approached him simultaneously in two separate police cars with lights flashing. The officers

gestured for defendant to get out of his car, told him that they had received a report that he was selling drugs, and circled defendant's car while looking inside. *Id*. Not only were the circumstances in *Gaines* drastically different, but the case does not stand for the proposition for which Mr. Osorio cites it—that is, that it does not matter when the suspect notices the presence of a second officer. The *Gaines* court did not address that issue at all. Therefore, the presence of two officers on the bus does not weigh in favor of finding a seizure when Mr. Osorio was not aware of the presence of the second officer.

That leaves only Mr. Osorio's final argument, which is that Perry failed to inform him that he had the right to terminate the encounter. In its prior ruling, the Court acknowledged that Perry had not done so, but that "this is the sole *Lopez* factor that weighs in favor of finding that the encounter was not consensual." Doc. 69 at 10. In light of *Lopez*'s statement that "the strong presence of *two or three factors* may be sufficient" to support the conclusion that a defendant was seized, *Lopez*, 443 F.3d at 1284-85 (internal citations and quotations omitted) (emphasis added), the presence of this single factor is not sufficient.[1]

The Court did not commit clear error in concluding that the encounter was consensual.

---

[1] In his reply brief [Doc. 80], Mr. Osorio contends that the Court should find the encounter was not consensual because Mr. Osorio did not express unequivocal and specific consent to speak with Agent Perry. He contends that a mumbled response combined with nodding his head up and down does not constitute unequivocal and specific consent. Because Mr. Osorio did not make this argument in his opening brief and therefore the United States did not have the opportunity to respond, the Court deems it waived. *United States v. Harrell*, 642 F.3d 907, 918 (10th Cir. 2011) ("[A]rguments raised for the first time in a reply brief are generally deemed waived.").

II.     **Mr. Osorio Voluntarily Consented to Permit Perry to
        View the Contents of His Bag**

        **A.  Agent Perry Did Not Coerce Mr. Osorio**

Based on the evidence and testimony presented at the hearing, the Court found that Agent

Perry and Mr. Osorio had the following exchange:

> Perry then said, "Would you voluntarily consent for a search of your bags you have
> for contraband, sir?"   Osorio asked, "You say would I voluntarily?" Perry
> confirmed, "Yes, sir." And then Osorio declined, saying, "No, sir." At this point in
> the encounter, Osorio had refused to grant Perry consent to search his luggage.

> Perry then followed up: "Okay. Would you be able to open it up and show me the
> contents of it?" Osorio responded, "Contents?" Perry then said, "Yes, sir," and after
> a short pause said, "Thank you, sir." The recording contains no audible response
> from Osorio, who stood up in the aisle, retrieved the Nike shopping bag, placed it
> on his seat, and removed one of two shoe boxes inside. At this point in the
> recording, one can hear the sound of paper crinkling, as though someone is moving
> or opening the paper Nike shopping bag. Perry could see the two shoe boxes inside.
> Osorio opened one shoe box to reveal a pair of shoes. Then Perry asked, "Get you
> some new shoes?" and Osorio responded, "Yes, sir." Perry observed, "Those are
> expensive shoes, aren't they?" Osorio responded, "Air Jordans." Osorio replaced
> the lid on the shoe box, put it back in the Nike shopping bag, and returned it to the
> overhead luggage compartment.

Doc. 69 at 5 (internal citations omitted). Based on this evidence, the Court concluded that Mr.

Osorio's actions constituted conduct that a reasonable officer would understand to be unequivocal

and specific consent to look at what was inside the luggage. Then, in accordance with *Schneckloth*

*v. Bustamonte*, 412 U.S. 218, 227 (1973), the Court examined the totality of the circumstances

surrounding the search, guided by the factors set forth by the Tenth Circuit in *United States v.*

*Sawyer*, 441 F.3d 890, 895 (10th Cir. 2006), and concluded that that Mr. Osorio had given valid,

non-verbal consent to Agent Perry to look inside his shopping bag.

Now, for the first time in his motion to reconsider, Mr. Osorio argues that in deciding whether Mr. Osorio voluntarily opened his bag and allowed Agent Perry to peer inside, the Court should have considered "that Mr. Osorio has a poor education, he struggled in school in special education classes and essentially has difficulty comprehending." Doc. 73 at 7. Mr. Osorio did not make this argument in his briefs on the motion to suppress [Docs. 37 and 48], nor did he move to supplement his briefs with this argument at any point before the Court entered its Memorandum Opinion and Order denying his motion to suppress. Therefore, Mr. Osorio waived the argument, and the Court need not consider it. Further, even if the Court were to overlook the waiver, it still would be unpersuasive. Mr. Osorio did testify in passing at the hearing that he was in special education classes in school. However, he did not testify (and his counsel did not argue) that he lacked the mental capacity to voluntarily consent to allow Perry to look inside his bag. Further, after watching Mr. Osorio's testimony, the Court was left with the definite impression that he was able to understand what was happening during his interaction with Agent Perry as well as what was happening in the courtroom that day. With regard to his response (set forth above) to Agent Perry when he asked Mr. Osorio if he would voluntarily consent to a search, Mr. Osorio stated, "[W]hen I heard the word 'voluntarily,' I immediately thought of somebody raising their hand. I didn't voluntarily want to do something, and I said, 'No.'" Transcript at 266. This demonstrates two things. First, it shows that Mr. Osorio understood the meaning of the word "voluntarily." Second, it shows that he had the ability and understanding to say no to something he did not want to do.

Next, Mr. Osorio renews his argument that Agent Perry deceived him by not informing Mr. Osorio that he was checking the bus for drugs. The Court addressed this argument in its prior ruling, *see* Doc. 69 at 13-14, and concluded that Agent Perry did not deceive Mr. Osorio. In his

motion to reconsider, Mr. Osorio puts forth neither new law from the Tenth Circuit or Supreme Court nor new evidence that would persuade the Court that it erred. Agent Perry did not engage in deception. He informed Mr. Osorio that he was a member of law enforcement, that he was checking the bus, and that he was looking for weapons or illegal items. Agent Perry then asked for permission to search for contraband, which would include illegal drugs. *See United States v. Easley*, 911 F.3d 1074, 1081 (rejecting the argument that a reasonable person would not have felt free to refuse to cooperate because of Agent Perry's characterization of his motives for being onboard the bus when he informed asked the passenger if he could search her bags for "contraband"). The court finds no error here.

Mr. Osorio briefly argues that the presence of two officers on the cramped bus was a "show of authority" that made Agent Perry's request to look inside Mr. Osorio's bag coercive. Doc. 73 at 7. He notes that he became aware of Officer Zamarron's presence shortly before he opened his bags for Agent Perry. *Id*. While he did testify to that, Transcript of Suppression Hearing ("Tr"). at 246, Mr. Osorio never testified that he found Agent Zamarron intimidating or that his presence contributed in any way to his decision to let Agent Perry look inside his bags. Mr. Osorio did testify that Agent Zamarron did not interact with or approach him until after Agent Perry placed him under arrest, at which point Zamarron brought him to the front of the bus. Tr. at 275-76. Again, Mr. Osorio points to no new evidence, or evidence overlooked by the Court, that would change its analysis. Mr. Osorio's reliance on an older Ninth Circuit case, *United States v. Stephens*, 206 F.3d 914, 917-18 (9th Cir. 2000) is also unpersuasive for several reasons. First, it is not binding on this Court. Second, Mr. Osorio could have cited *Stephens* in his original briefing but did not, and he may not raise new arguments for the first time in a motion to reconsider. But most importantly, *Stephens* is distinguishable on its facts. In that case, there were not two, but three, agents on the

bus while even more agents waited outside, a far cry from the two agents present in this case. In

addition, the officers in *Stephens* used the bus's public address system to speak to passengers,

which added to the officers' show of authority. That important fact is absent here.

Finally, Mr. Osorio also recycles the argument that he was coerced because Agent Perry

did not advise him of his right to refuse consent. The Court considered and rejected this argument

in its prior ruling, relying on *Ohio v. Robinette*, 519 U.S. 33, 39-40 (1996) and *United States v.*

*Zubia-Melendez*, 263 F.3d 1155, 1163 (10th Cir. 2001). Mr. Osorio offers neither argument nor

citation to authority that would suggest anything improper about the Court's reasoning or reliance

on those cases.

### B.  Mr. Osorio Gave Unequivocal and Clear Consent

As the Court explained it its prior ruling, it construed Mr. Osorio's actions—standing up,

retrieving the Nike shopping bag, opening up the shoe box inside, and then doing something

similar with the camouflage duffel bag—as conduct that a reasonable officer would understand to

be unequivocal and specific non-verbal consent to look inside those bags. Doc. 69 at 12. However,

just as he did in the original motion to suppress, Mr. Osorio argues that he merely acquiesced to

the lawful authority displayed by Agent Perry and that he did not give clear and unequivocal

consent for Perry to look inside his bags. Factually, Mr. Osorio's argument turns on two things:

(1) that after Mr. Osorio refused to consent to allow Agent Perry to search his bags, Agent Perry

asked to perform a more limited search in which Mr. Osorio would open the bags and Agent Perry

would look inside, and (2) Mr. Osorio protested by exhaling and sighing when Agent Perry made

his second request. Doc. 73 at 9.

Turning to the first argument, the Court notes that it addressed this issue in its prior

Memorandum Opinion and Order. Citing *United States v. Zubia-Melendez*, 263 F.3d 1155, 1163

(10th Cir. 2001), the Court noted that an officer is not required to refrain from renewing a request for consent after a defendant has first denied it. Doc. 69 at 13. That is particularly true where, as here, the second request is narrower in scope. Mr. Osorio has not demonstrated that the Court erred in relying on *Zubia-Melendez*. As to Mr. Osorio's second factual argument, the Court did not hear any sighs or loud exhaling on the audio recording of the encounter, and it did not find that Mr. Osorio did those things. Mr. Osorio does not point to any time stamp on the recording where his sighs or exhales can be heard. Therefore, the Court is not persuaded that it erred in its determination that Mr. Osorio consent was not equivocal.

Mr. Osorio argues that this case is like *United State v. Castro-Gallegos*, Cr. No. 15-2226 JCH, 2016 WL 10592166 (D.N.M. Jan. 29, 2016) (unpublished), in which the undersigned found that the defendant did not give Agent Perry clear and unequivocal consent to search her luggage on a bus. However, that case is distinguishable because the context differed significantly. In *Castro-Gallegos*, Agent Perry twice asked the defendant for consent to allow him to search her bag. The first time Agent Perry asked her for permission to search, "[w]ith uncertainty in her voice, [defendant responded], 'Um, okay, it's only my underwear.'" *Id*. at *2. This was not unequivocal consent to search, as demonstrated by the exchange that followed when Agent Perry asked for permission to move the defendant's bag to a seat across the aisle. The defendant did not respond but instead stood up and moved the bag to the seat she had been sitting on, not the seat across the aisle. *Id*. She then opened the bag so Agent Perry could see inside, and she shifted the contents around; however, she did not let him perform his own search. Therefore, the defendant twice denied Agent Perry access to her bag perform his own search. *Id*. Agent Perry then made a third request: "Okay, I see you moving stuff, would you give me permission to do a search, ma'am?" *Id*. Once again, the defendant did not agree, responding, "Uh, it's my underclothes and . . ." After

some discussion, defendant removed her underwear from the bag and hid it under a blanket. *Id*.

Then defendant gestured toward her bag with her arm outstretched, which Agent Perry interpreted

as nonverbal permission for him to search it himself. *Id*. He did so, performing a search by putting

his hands inside the bag, where he was able to feel several concealed, hard bundles. *Id*. The Court

suppressed the evidence, concluding that the defendant had not granted Agent Perry unequivocal

and specific consent to perform a manual search of her bag. *Id*. at *5. First, Defendant had declined

to grant such consent twice before, but rather had merely opened the bag and allowed him to see

inside while she shifted the contents. *Id*. Second, she did not verbally tell him he could perform a

manual search. Third, in light of her previous interaction with Agent Perry, defendant's non-verbal

gesture toward her bag was ambiguous. *Id*. Given the context of the pair's interaction up to that

point, a reasonable officer could not assume that defendant's outflung arm was anything more than

permission for him to peer inside the bag again.

In this case, the interaction between Agent Perry and Mr. Osorio was much more

straightforward. Agent Perry asked for permission to search Mr. Osorio's bags, and Mr. Osorio

refused. Then Agent Perry made a more limited request—he asked if Mr. Osorio was willing to

show him the contents of his bags—and in response Mr. Osorio stood up and did just that. This

action—unlike the outstretched arm in *Castro-Gallegos*—was clear, unequivocal, and specific.

### III.    Agents Performed a Permissible Inventory Search

In his motion to reconsider, Mr. Osorio does not dispute the Court's finding that Agent

Perry had probable cause to arrest him. However, Mr. Osorio does argue that the Court erred in

holding that the United States performed a permissible inventory search of his belongings after his

arrest. First, Mr. Osorio contends that applying the inevitable discovery doctrine requires particular

care, and the doctrine does not pertain to this case because the agents merely suspected, but did

not know, that he had drugs in his duffel bag, and therefore the contents of Mr. Osorio's bags was not a foregone conclusion. Doc. 73 at 12, 13. Second, he argues that the inventory search was but a ruse for an investigative search. *Id*. at 14. Neither argument is persuasive.

The Court explained its reasoning in its prior opinion by setting forth the law on inevitable discovery and inventory searches. Mr. Osorio does not point to any errors or inaccuracies in the Court's discussion of the law. He also does not dispute that inventory searches must be analyzed under a two-pronged test: first, whether they are conducted according to standardized procedures, and second, whether the policy or practice governing inventory searches is designed to produce an inventory. As the Court previously noted, the Government met its burden on both prongs of this test. The Government showed that the DEA does have a policy requiring a complete inventory "of all property that is taken into custody by DEA for safekeeping, regardless of whether probable cause exists to search the property . . . to protect DEA personnel from claims of theft or loss of property …" Gov't Ex. 5. The policy further requires that items be listed on forms DEA-6 and DEA-12. The evidence shows that when they arrived at the DEA office with Mr. Osorio and his luggage, government agents conducted an inventory search of his possessions. Tr. at 39, 42-46. The evidence also shows that law enforcement acted in accordance with the inventory policy, listing contraband items taken into custody on the DEA-6, *see* Govt. Ex. 6 ("Report of Investigation") at 2-4, and all other items on form DEA-12, *see* Govt. Ex. 7 ("Receipt for Cash or Other Items").

Mr. Osorio argues that the inventory search of his belongings was merely a ruse for a warrantless investigative search. Doc. 73 at 14. However, he points to no evidence to support that assertion. Rather, he states in conclusory fashion that "because agents needed to search the bag to confirm its contents were contraband, the search thereof was done to confirm the identity of the

items in the bag and not to produce an inventory." *Id*.  Mr. Osorio does not address the fact that DEA policy required the agents to perform an inventory search of his belongings. Accordingly, the Court did not err in finding that this was a proper inventory search under the inevitable discovery doctrine.

Finally, Mr. Osorio appears to confuse the inevitable discovery doctrine (of which inventory searches are a subset) with the plain-view doctrine, which allows a law-enforcement officer to seize evidence of a crime without a warrant if "(1) the officer was lawfully in a position from which the object seized was in plain view, (2) the object's incriminating character was immediately apparent, … and (3) the officer had a lawful right of access to the object." *United States v. Angelos,* 433 F.3d 738, 747 (10th Cir. 2006) (quoting *United States v. Thomas*, 372 F.3d 1173, 1178 (10th Cir. 2004)). Although the plain-view exception "may support the warrantless *seizure* of a container believed to contain contraband," it does not automatically support a "subsequent *search* of the concealed contents of the container." *United States v. Corral*, 970 F.2d 719, 725 (10th Cir. 1992) (emphasis in original). Rather, a subsequent search is only valid if "the contents of a seized container are a foregone conclusion" or if the search is "accompanied by a warrant or justified by one of the exceptions to the warrant requirement." *Id*. Mr. Osorio argues that the inventory search in this case was improper because it was not a foregone conclusion that the packages that Agent Perry saw in Mr. Osorio's duffel bag contained drugs. Doc. 73 at 13. However, Mr. Osorio does not cite a single case to support his argument that law enforcement cannot perform an inventory search unless it is a foregone conclusion that the property to be searched contains contraband. Rather, that is a requirement that applies to the plain-view doctrine. As a result, the Court rejects Mr. Osorio's argument. Furthermore, having declined in its previous

opinion to reach the question of whether the plain view exception applies, the Court declines to address it here as well.

      **IT IS THEREFORE ORDERED** that *Defendant Kadeem S. Osorio's Motion to Reconsider Order Denying Defendant's Motion to Suppress* [Doc. 73] is **DENIED**.

_____

**UNITED STATES DISTRICT JUDGE**